# CA No. 23-1819

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

KEVIN MILLETTE,

Defendant-Appellant.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

## BRIEF OF APPELLEE UNITED STATES OF AMERICA

Darcie N. McElwee
United States Attorney

Brian S. Kleinbord
Assistant U.S. Attorney
100 Middle Street
East Tower, Sixth Floor
Portland, ME 04101
(207) 780-3257

# TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

Statement of Issues Presented ............................................................ vi

Statement of Facts .................................................................................. 1
A.  Introduction ..................................................................................... 1
B.  Original Conviction for Possession of Child Pornography ............. 1
C.  Millette Violates His Supervised Release ....................................... 4
D.  Revocation Hearing ......................................................................... 6

Summary of Arguments ........................................................................ 12

Argument ................................................................................................ 13
I.   THE DISTRICT COURT SOUNDLY EXERCISED ITS
     DISCRETION IN REVOKING MILLETTE'S SUPERVISED
     RELEASE BASED ON ITS FINDING THAT, BY SLEEPING IN
     THE SAME BEDROOM AS HIS 15-YEAR-OLD DAUGHTER,
     MILLETTE VIOLATED THE CONDITION THAT PROHIBITED
     HIM FROM HAVING UNSUPERVISED CONTACT WITH
     MINORS ...................................................................................... 13
     A.  Standard of Review ............................................................... 14
     B.  Millette's conduct was plainly prohibited by the no-contact
         condition, and his rule-of-lenity argument is unpreserved
         and meritless. (Appellant's arguments I and II) .................. 17
     C.  Millette failed to object to the reimposition of the condition,
         and any modification should come from the district court.
         (Appellant's arguments III and IV) ..................................... 24

Conclusion .............................................................................................. 32

i

# TABLE OF AUTHORITIES

## Federal Cases

*Forestal Guarani, S.A. v. Daros Intern., Inc.*, 613 F.3d 395 (3d Cir. 2010) ..................................................................................................25-26

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973) ................................................15

*Home Depot USA, Inc. v. Lafarge North America, Inc.*, 59 F.4th 55 (3d Cir. 2023) .......................................................................................25

*In re Montgomery Ward & Co.*, 428 F.3d 154 (3d Cir. 2005) .................26

*Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076 (3d Cir. 1984) ...............18

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ..........................15, 15-16, 26-27

*Muscarello v. United States*, 524 U.S. 125 (1998) .............................23-24

*Quality Associates, Inc. v. The Proctor & Gamble Distributing LLC*, 949 F.3d 283 (6th Cir. 2020) ........................................................................26

*United States v. Albanese*, 554 F.2d 543 (2d Cir. 1977) .........................18

*United States v. Aponte-Guzman*, 696 F.3d 157 (1st Cir. 2012) ........22-23

*United States v. Benoit*, 975 F.3d 20 (1st Cir. 2020) ...............................28

*United States v. Booth*, 551 F.3d 535 (6th Cir. 2009) .............................23

*United States v. Bramley*, 847 F.3d 1 (1st Cir. 2017) .............................25

*United States v. Brown*, 235 F.3d 2 (1st Cir. 2000).................................17

*United States v. Báez-Martínez*, 950 F.3d 119 (1st Cir. 2020) ...............22

*United States v. Cabrera-Rivera*, 893 F.3d 14 (1st Cir. 2018)................28

*United States v. D'Amario*, 412 F.3d 253 (1st Cir. 2005).......................27

*United States v. DaSilva*, 844 F.3d 8 (1st Cir. 2016) ..............................28

*United States v. Dawson*, 64 F.4th 1227 ................................................22

*United States v. Dion*, 37 F.4th 31 (1st Cir. 2022) ............................22, 24

*United States v. Edwards*, 834 F.3d 180 (2d Cir. 2016)..........................14

*United States v. Franklin*, 51 F.4th 391 (1st Cir. 2022) ...................15-16

*United States v. Gallo*, 20 F.3d 7 (1st Cir. 1994) ...............................20-21

*United States v. Garrasteguy*, 559 F.3d 34 (1st Cir. 2009) .....................16

*United States v. Gonzalez*, 407 F.3d 118 (2d Cir. 2005)..........................22

*United States v. Hinkel*, 837 F.3d 111 (1st Cir. 2016) ............................29

*United States v. Hughes*, 716 F.2d 234 (4th Cir. 1983) ..........................21

*United States v. Leach*, 89 F.4th 189 (1st Cir. 2023) ........................16, 20

*United States v. Loy*, 237 F.3d 251 (3d Cir. 2001)..............................18-19

*United States v. Marino*, 833 F.3d 1 (1st Cir. 2016) ..............................16

*United States v. Matos*, 328 F.3d 34 (1st Cir. 2003) ...........................14-15

*United States v. McCullock*, 991 F.3d 313 (1st Cir. 2021) ................27, 29

*United States v. McEntire*, 153 F.3d 424................................................22

*United States v. Mendoza-Maisonet*, 962 F.3d 1 (1st Cir. 2020) ............15

*United States v. Mercado*, 777 F.3d 532 (1st Cir. 2015) .........................28

*United States v. Metzener*, 584 F.3d 928 (10th Cir. 2009) ......................23

*United States v. Munera-Gomez*, 70 F.4th 22 (1st Cir. 2023)................14

*United States v. Oquendo-Rivera*, 586 F.3d 63 (1st Cir. 2009).........14, 15

*United States v. Pabon*, 819 F.3d 26 (1st Cir. 2016) .............28, 28-29, 29

*United States v. Peppe*, 80 F.3d 19 (1st Cir. 1996)..................................16

*United States v. Perazza–Mercado*, 553 F.3d 65 (1st Cir. 2009) ............20

*United States v. Ramos*, 979 F.3d 994 (2d Cir. 2020) .............................. 26

*United States v. Rivera-Rodríguez*, 75 F.4th 1 (1st Cir. 2023) .......... 21-22

*United States v. Rodriguez-Monserrate*, 22 F.4th 35 (1st Cir. 2021) 24-25

*United States v. Santiago*, 769 F.3d 1 (1st Cir. 2014)........................ 16-17

*United States v. Suchowolski*, 838 F.3d 530 (5th Cir. 2016) .................. 22

*United States v. Teixeira*, 62 F.4th 10 (1st Cir. 2023) ...................... 14, 15

*United States v. Vargas-Davila*, 649 F.3d 129 (1st Cir. 2011) .............. 26

*United States v. Vixamar*, 679 F.3d 22 (1st Cir. 2012) .......................... 15

*United States v. Widmer*, 785 F.3d 200 (6th Cir. 2015) ........................ 20

*United States v. York*, 357 F.3d 14 (1st Cir. 2004)................................. 25

## State Cases

*Adams v. State*, 680 S.E.2d 429 (Ga. Ct. App. 2009) .............................. 22

*Commonwealth v. Hall*, 80 A.3d 1204 (Pa. 2013).................................... 23

*People v. Hoeninghaus*, 16 Cal.Rptr.3d 258 (Cal. Ct. App. 2004) .......... 23

*State v. Gauthier*, 145 A.3d 833 (Vt. 2016)............................................ 23

## Federal Statutes

18 U.S.C. § 3553(a) ................................................................................ 2

18 U.S.C. § 3583(d)(1)............................................................................ 16

18 U.S.C. § 3583(d)(2)............................................................................ 16

18 U.S.C. § 3583(e)(2)............................................................................ 27

18 U.S.C. § 3583(e)(3) ............................................................................ 14

## Federal Guidelines

U.S.S.G. § 5D1.3(b) ...................................................................... 16

## Other Authorities

Black's Law Dictionary 1302 (11th ed. 2019) ................................... 20, 22

Neil P. Cohen, *The Law of Probation and Parole* § 9:11 (2d ed. 1999) .. 18

## STATEMENT OF ISSUE PRESENTED

THE DISTRICT COURT FOUND THAT MILLETTE VIOLATED HIS SUPERVISED RELEASE—WHICH PROHIBITED HIM FROM HAVING UNSUPERVISED CONTACT WITH MINORS—BY SLEEPING IN THE SAME BEDROOM WITH HIS 15-YEAR-OLD DAUGHTER. MILLETTE ADMITTED THIS CONDUCT, BUT ARGUED THAT IT WAS NOT A VIOLATION BECAUSE AN APPROVED CHAPERONE WAS IN THE BACKYARD SWIMMING POOL AND WAS THUS "PRESENT" WHEN THE CONDUCT OCCURRED.

THE ISSUE PRESENTED IS WHETHER THE DISTRICT COURT SOUNDLY EXERCISED ITS DISCRETION WHEN IT REJECTED MILLETTE'S CONSTRUCTION OF THE CONDITION AND REVOKED HIS SUPERVISED RELEASE, FINDING THAT MILLETTE'S CONDUCT WAS "SO FAR BEYOND THE LINE THAT IT'S . . . NOT REALLY DEBATABLE."

# STATEMENT OF FACTS

## A.    Introduction

Defendant-Appellant Kevin Millette was convicted of possession of child pornography and, as a condition of his supervised release was ordered not to have unsupervised contact with minors. D 88 at 5.[1] During an unannounced home visit, a probation officer discovered that Millette had spent the night in the same bedroom with his 15-year-old daughter, conduct which Millette did not dispute. SA at 28-29. The district court found this behavior was in clear violation of Millette's supervised release and imposed a four-month sentence for the violation. Millete now appeals that finding. RA 192.

## B.    Original Conviction for Possession of Child Pornography

In 2016, Millette pleaded guilty to a one-count information charging him with possession of child pornography. D 22.

Millette possessed "thousands of digital still images depicting children engaging in sexually explicit conduct," including many images

---

[1]    Citations herein are as follows: matters on the district court's docket as "D[#];" Record Appendix as "RA [pg#];" Sealed Appendix as "SA [pg#];" Defendant-Appellant's Addendum as "Add. [pg#]," and Defendant-Appellant's opening brief as "D.Br. [pg#]."

of prepubescent minors between the ages of 6 and 10 years old. D 25 at 2; SA 4. According to the presentence report, Millette was found in possession of 24,277 still images and 1,022 videos of child pornography. *Id*. Millette had a previous conviction in Maine state court, in 2010, for possession of sexually explicit materials depicting a minor under the age of 12. SA 8. In an interview with law enforcement regarding the federal offense, Millette admitted that viewing child pornography was a "life-long" problem for him. SA 4.

The Court sentenced Millette to the statutory minimum term of 120 months imprisonment, followed by 7 years of supervised release, and $39,000 in restitution. D 35. On December 21, 2020, after Millette had served approximately 61 months of his sentence, the district court granted his motion for compassionate release on grounds including his health conditions as well as the risk then posed by COVID-19. D 87. In considering Millette's motion for compassionate release, the Court assessed the applicable factors under 18 U.S.C. § 3553(a), which included the need to protect the public from further crimes of the defendant. *Id*. at 8-9. The Court found that the risk Millette posed was mitigated by several factors, among them the conditions of supervised

release, including special condition 9, which prohibited unsupervised contact with minors. *Id*. These conditions, the court found, "as well as the supervision by Mr. Millette's mother, with whom he intends to live, will minimize the risks associated with the possibility that he will again seek out child pornography." *Id*. at 8-9. The court added, however, that, "[i]n the event that [Millette] does return to his past conduct," the court "of course . . . retain[s] the power to revoke his supervised release and return him to prison. *Id*.

In granting Millete's motion for compassionate release, the court ordered Millette to "complete the remainder of his sentence, including his eighty-four-month term of supervised release, as outlined in the original Judgment of this Court on June 6, 2016." *Id*. at 15. In addition, the court modified Millette's supervised release conditions to include the following additional term:

> **Special Condition 9**: Defendant shall not associate, or have verbal, written, telephonic or electronic communication, with persons under the age of eighteen, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense, and who has been approved by the probation officer. This restriction does not extend to incidental contact during ordinary daily activities in public places.

*Id*. at 15-16.

## C. Millette Violates His Supervised Release

Millette's term of supervised released commenced on January 7, 2021. SA 23. On January 8, 2021, a supervisory probation officer spoke with Millette over the phone and reviewed his conditions, which Millette stated he understood. SA 24. In March of 2021, a review of Millette's internet activity revealed that he was visiting certain "sexual fetish" websites including "ABDL," or "Adult Baby Diaper Lovers." *Id.* Millette acknowledged this conduct during an April 1, 2021, meeting with his probation officer, and Millette was instructed to cease future searches of the same nature. *Id.*

On August 12, 2023, United States Probation Officer Kate Phillips made an unannounced visit to Millette's residence. SA 28. Millette was living with his mother, Melodie Millette, who had been approved as a chaperone to supervise contact Millette's contact with his minor 15-year-old daughter. D 122 at 8-10. Upon entering the residence, Officer Phillips discovered that Millette and his minor daughter were alone inside the house. *Id.* Specifically, Millette's daughter was on an inflatable mattress inside Millette's bedroom. *Id.* at 28-29. Millette's mother was in the backyard pool area wearing a wet bathing suit, and

admitted she had been swimming. *Id*. at 29; RA 125. The pool was separated from the house by a patio area that was approximately 20 to 30 feet long. RA 49.

When asked by Officer Phillips where he had spent the previous night, Millette claimed he had slept on a couch in the living room and that his minor child had slept on a cot inside his bedroom. *Id*. However, Millette's mother, when questioned separately, indicated that Millette had slept in his bedroom with his daughter. RA 50. Millette then acknowledged that he had lied to Officer Phillips and he admitted that his daughter slept in his bedroom the night before and on previous occasions as well. *Id*.

On August 15, 2023, the Probation Office filed a "Petition for Warrant for Offender under Supervision," recommending that Millette's supervised release be revoked for violating special condition 9,[2] D 106, and Millette was arrested on the warrant the following day. D 124. A final revocation hearing was held on September 25, 2023.

_____

[2]     At the time the petition was filed, the petition also alleged that Millette had violated Special Condition 9 by having contact with a female minor on at least two occasions in July 2021 at his residence, one of which was a birthday party. This allegation was not sustained at the final revocation hearing.

## D.    Revocation Hearing

At the final revocation hearing, Millette did not dispute had slept in his room with his minor child, with no approved supervisor in the same bedroom. *See* RA 99, 102, 111. Millette's counsel stated "there isn't a dispute as to what happened in August. . . . We're not going to present any evidence that—that Mr. Millette and [his daughter] didn't end up sleeping in a cot and a bed, two different bedding facilities, in the same room. That happened." RA 111. *See also* RA 102 ("[T]hat Kevin and [his minor daughter] slept on a cot in Kevin's room or vice versa isn't disputed. That's what happened. Kevin has said it happened. And his mom has said it happened.").

At the hearing, the government called Officer Phillips and Melodie Millette to testify, and their respective testimonies at an earlier preliminary hearing were admitted. *See* D 148, government's exhibits 1 and 2. Officer Phillips testified that Millette's mother disclosed that Millette had slept in the same room with his daughter and that this occurred on more than one occasion. RA 123. Phillips testified that: "In speaking with both Mr. Millette and his mother, I questioned them if this had happened before. And the answer I received was along the

lines of like, yes, but I always check on them throughout the night." RA 124. Phillips also testified that she instructed Millette regarding the no-contact condition, stating that she made it clear to Millette that "at the end of the day the instruction was this is [his] burden, and he needs to be the responsible person to leave the situation." RA 135. Specifically, Millette was required to "[r]emove himself from the home if the responsible party is going to be in a closed room so Mr. Millette wouldn't be alone with a minor." RA 135.

The Court also heard testimony from Millette's sister, Kim Lapierre, and Karen Stewart, a family friend, each of whom had been approved by the Probation Office to supervise Millette's contacts with his minor child. Lapierre testified that she thought it was "fine" to allow Millette to sleep alone in a bedroom with his daughter. RA 154.

Although Millette did not dispute the facts, the defense argued that Millette's conduct was "consistent with the conditions of supervision" because "we think that the approved supervisor was present within the meaning of the house." RA 99, 111. The government countered that "condition No. 9 is clear enough to prohibit the defendant from sleeping in the same room with any minor, including his

daughter, when there's not a supervisor present in the room with them." RA 107. The government argued that Millette's conduct demonstrated that he has not "fully bought into his conditions and how they're meant to protect minors and the public from the kind of difficulties that he faces, but also to protect himself from getting into trouble." RA 179. To be sure, had Millette been "invested" in his rehabilitation he "would try to stay as far" from the line of "any perceived ambiguity [by] either seeking clarification from his supervisors or just staying on that side so he does not even come close to violating." *Id.*

The court agreed with the government and found that Millette violated special condition 9 by sleeping in the same room as his daughter. *Id.* at 177. The Court opined that Millette's conduct "seems to me to be so far beyond the line that it's not—it's not really debatable." *Id.* The court rejected Millette's argument regarding an ambiguity in the language, noting that "the situation that we're presented with, which is sleeping in the same bedroom, is beyond really that ambiguity. I think any reasonable person would know that that is not permitted under these circumstances." RA 108. The court was unequivocal in its

conclusion: "No contact with minors means no minors sleeping in your room. If I know anything, I know that." RA 186.

Moreover, the court found that Millette's dishonesty was evidence that he knew his conduct was in violation of the condition. According to the court, "[t]he fact that when first questioned," Millette "lied about it suggests to me [he] knew full well it was a violation . . . ." RA 177. The court observed that if Millette had a counseling session the day after "having slept the night with your daughter in your room," Millette would not have "admit[ted] that in a group setting." RA 185. "I think you knew in your heart that that was not the thing to do. That's why you lied to Officer Phillips." *Id.*

Though the Court found that Millette's conduct in sleeping alone with his daughter in his bedroom was a clear violation of special condition 9, the Court did express the view that the condition was "ambiguous in its outer recesses," D 148 at 93, and noted that it "should be clarified going forward." *Id.* at 16. The Court further stated that "We will work on those rules. We will maybe draw up a contract in your case so that there is less wiggle room." *Id.* at 95.

The court proceeded to sentencing. Millette's violation was "a Grade C violation," and his criminal history placed him in Category II, yielding an imprisonment range of four to ten months. RA 177. Millete did not object to the court's calculation of the guidelines. *Id.*

The government recommended "the same sentence that probation has recommended as part of its revocation report, four months of incarceration to be followed by a further period of supervised release as indicated in the report." RA 178. Millette's violation, the government contended, was "extremely concerning conduct for somebody who has a conviction involving child abuse imagery, multiple convictions, in fact." *Id*. The government argued that "[t]here really isn't any reason why the defendant should have been sleeping in a room alone with his daughter," particularly since one of the primary objectives of Millete's supervised release was to "strictly limit his contact with minors." *Id.*

The court imposed a sentence of two months in prison to be followed by five years of supervised release. D 148 at 96; RA 188. The court further ordered that, "upon release from imprisonment the defendant shall . . . comply with the newly imposed standard conditions effective November 1, 2016, and all previously imposed special

conditions except special condition 8." *Id*. Millette did not object to the court's sentence or to the reimposition of any of the conditions of supervised release. RA 188-191. Millette filed a notice of appeal on October 4, 2023. D 139.

Millette has since filed a motion in the district court styled as an "emergency motion to approve supervisors or to delete, amend or clarify special condition no. 8 of supervised release conditions." D 149. The government filed a response to that motion, D 157, and Millette has followed with a "reply to the government's objection," filed on March 18, 2024. In his most recent pleading, Millette asks the court to "amend condition 8 so that it no longer applies to his daughter and for such other and further relief as is just and warranted under the circumstances." D 158 at 4.

## SUMMARY OF THE ARGUMENTS

The district court soundly concluded that Millette violated his supervised release by sleeping in the same bedroom as his 15-year-old daughter. Millette's conduct, which he does not dispute, plainly and unambiguously violated the condition of supervised release that prohibited him from having unsupervised contact with minors. Further, the rule of lenity does not apply here because there is no issue of statutory construction, nor is there any ambiguity in Millette's conduct. And to the extent that Millette argues that the court wrongly reimposed the no-contact condition, that argument is unpreserved and meritless. Millette has failed to establish any error in the district court's ruling.

# ARGUMENT

## THE DISTRICT COURT SOUNDLY EXERCISED ITS DISCRETION IN REVOKING MILLETTE'S SUPERVISED RELEASE BASED ON ITS FINDING THAT, BY SLEEPING IN THE SAME BEDROOM AS HIS 15-YEAR-OLD DAUGHTER, MILLETTE VIOLATED THE CONDITION THAT PROHIBITED HIM FROM HAVING UNSUPERVISED CONTACT WITH MINORS.

The issue on appeal is a narrow one. Millette does not argue that the no-contact condition is improper generally or that the district court lacked authority to impose it in the first place. Nor does Millette contest any of the district court's factual findings—indeed, he has readily admitted that he slept overnight in the same bedroom with his 15-year-old daughter. Rather, Millette argues only that the language of the condition was ambiguous and that the rule of lenity should apply such that the "ambiguous conditions of supervised release must be construed in [his] favor." D.Br. at 19. This claim fails for two primary reasons.

First, the no-contact condition was not ambiguous and the district court properly concluded that Millette's conduct of sleeping in the same room with his minor daughter fell within the heartland of this rule and plainly violated the condition. Second, the rule of lenity applies only to issues of statutory construction, not to a court's evidentiary finding that

a condition of supervised release was violated, and even if the rule

applied here, there is no ambiguity to be construed in Millette's favor.

## A.    Standard of Review

The government is required to prove a violation of supervised

release conditions by a preponderance of the evidence. *United States v.*

*Teixeira*, 62 F.4th 10, 17 (1st Cir. 2023); 18 U.S.C. § 3583(e)(3); *United*

*States v. Oquendo-Rivera*, 586 F.3d 63, 66 (1st Cir. 2009). "The

preponderance standard requires proof that the defendant's violation of

supervision was more likely than not." *United States v. Edwards*, 834

F.3d 180, 199 (2d Cir. 2016) (internal quotation marks omitted). The

district court's factual findings are reviewed for clear error, while the

court's decision to revoke supervised release and its choice of penalty (if

preserved) are reviewed for abuse of discretion. *Oquendo-Rivera*, 586

F.3d at 66-67.

Clear error review is "exceedingly deferential," and a reviewing

court will not "disturb either findings of fact or conclusions drawn

therefrom unless the whole of the record compels a strong, unyielding

belief that a mistake has been made." *United States v. Munera-Gomez*,

70 F.4th 22, 34 (1st Cir. 2023) (quoting *United States v. Matos*, 328 F.3d

34, 39-40 (1st Cir. 2003)). *See United States v. Mendoza-Maisonet*, 962 F.3d 1, 16 (1st Cir. 2020). Mounting a successful challenge to a court's revocation finding is therefore "a tall task," *United States v. Vixamar*, 679 F.3d 22, 29 (1st Cir. 2012), because it requires "a definite and firm conviction that the [violation] finding was erroneous, a conclusion made difficult because the reviewing court must interpret the evidence in the light most favorable to the government . . . ." *Oquendo-Rivera*, 586 F.3d at 67 (internal quotation marks and citations omitted).

In addition, the Federal Rules of Evidence do not apply in revocation proceedings, but the evidence presented must be reliable. *Teixeira*, 62 F.4th at 17. Compared to criminal trials, supervised release revocation hearings are subject to few constitutional or procedural safeguards, as "[p]robation revocation . . . is not a stage of a criminal prosecution," *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), and "there is no thought to equate" the two. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). The flexible evidentiary standard that applies to revocation proceedings allows consideration of evidence that would be inadmissible in a criminal prosecution, including affidavits and other documents, *Morrissey*, 408 U.S. at 489, as well as hearsay that bears sufficient

indicia of reliability. *United States v. Franklin*, 51 F.4th 391, 396 (1st Cir. 2022).

The district court has the authority to impose any condition of supervised release that is reasonably related to (1) the defendant's offense, history, and characteristics; (2) the need to deter the defendant from further criminal conduct; (3) the need to protect the public from further crimes by the defendant; and (4) the effective educational, vocational, medical, or other correctional treatment of the defendant. U.S.S.G. § 5D1.3(b); *see also* 18 U.S.C. § 3583(d)(1); *United States v. Leach*, 89 F.4th 189, 201 (1st Cir. 2023); *United States v. Peppe*, 80 F.3d 19, 23 (1st Cir. 1996).

Finally, this Court has said that judges have "significant flexibility" in crafting special conditions. *See United States v. Marino*, 833 F.3d 1, 10 (1st Cir. 2016) (quoting *United States v. Garrasteguy*, 559 F.3d 34, 41 (1st Cir. 2009)). A special condition must "involve[ ] no greater deprivation of liberty than is reasonably necessary" to accomplish those goals, *see* 18 U.S.C. § 3583(d)(2), and "be supported by the record." *Garrasteguy*, 559 F.3d at 42. Ultimately, what "separates" a "permissible" condition from an "impermissible" one "is whether, given

the facts," the "restriction was 'clearly unnecessary.'" *United States v. Santiago*, 769 F.3d 1, 9 (1st Cir. 2014) (quoting *United States v. Brown*, 235 F.3d 2, 7 (1st Cir. 2000)).

### B. Millette's conduct was plainly prohibited by the no-contact condition, and his rule-of-lenity argument is unpreserved and meritless. (Appellant's arguments I and II)

Based on the undisputed fact that Millette slept in the same bedroom with his minor daughter, the district court properly found that Millette violated the condition of his supervised release that prohibited him from having unsupervised contact with minors. Both the evidence and sound judgment led the court ineluctably to a reasonable conclusion: "No contact with minors means no minors sleeping in your room. If I know anything, I know that." RA 186.

In arguing to the contrary, Millette has seized on what was essentially dicta by the district court that the condition may present some ambiguity "in its outer recesses." D 148 at 93. The court posited several hypotheticals to purportedly demonstrate this potential ambiguity, such as whether the chaperone had to use the bathroom or leave the room momentarily. *See* RA 107-108 ("what happens if the approved chaperone has to use the restroom," or "the chaperone has to

be momentarily out of the room"). These hypotheticals are beside the point and do not demonstrate an ambiguity in the no-contact condition because there is nothing to indicate that such conduct would ever constitute a violation. *See Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1100 (3d Cir. 1984) (Aldisert, J., concurring) (discussing the "fallacy of irrelevance" which involves "attacking something that has not been asserted.").

Challenges to similar no-contact provisions historically have involved arguments that inadvertent or fleeting contacts do not fall within the ambit of the condition. In *United States v. Albanese*, 554 F.2d 543, 546 n.5 (2d Cir. 1977), the Second Circuit long ago noted that "[t]he term 'association' has been defined in the probation or parole context to mean something more than 'merely a fleeting or casual acquaintance.'" *See also* Neil P. Cohen, *The Law of Probation and Parole* § 9:11 (2d ed. 1999) ("Courts routinely hold that a probation or parole condition proscribing associating with a person or group refers to planned, prolonged contact as distinguished from chance or casual meetings."). *Cf. United States v. Loy*, 237 F.3d 251, 269 (3d Cir. 2001) (noting that deliberately seeking contact with minors would not be "casual" or

"unavoidable" and would run afoul of condition prohibiting defendant from having contact with minors). There is no doubt that Millette's act of sleeping overnight in the same bedroom with his daughter constitutes deliberate, planned, and prolonged unsupervised contact, and Millette does not suggest otherwise.

Millette makes a different, novel argument here—that the phrase "in the presence of" is ambiguous—because it could mean "within ear shot" or simply "at home." D.Br. at 22. This argument is not supported by authority or, as the district court has already concluded, common sense. Indeed, the government has found no case—and Millette does not identify one—in which a court held that the phrase "in the presence of" was vague in the context of a no-contact condition, or that a supervisor could be "present" by being in the backyard swimming pool while the probationer is alone inside the house with a minor. To the contrary, Millette's conduct was so far removed from any point of ambiguity that it was "not really debatable." RA 177.[3]

---

[3] And even if there were ambiguities in the "outer recesses" of the rule, the Court need not concern itself with those remote possibilities because Millette's conduct falls squarely within the heartland of the prohibition. Moreover, Millette has not preserved a facial challenge to the condition, but rather has made a limited attack on its application to

The phrase "in the presence of" should thus be interpreted in a commonsense manner and consistent with the objectives of supervised release, namely "protecting the public from further crimes by the defendant and his rehabilitation." *United States v. Perazza–Mercado*, 553 F.3d 65, 70 (1st Cir. 2009). *United States v. Widmer*, 785 F.3d 200, 208 (6th Cir. 2015) (noting the "compelling governmental interest" in protecting minor children from further crimes of the defendant, and upholding a no-contact condition imposed on defendant convicted of receiving child pornography). These objectives would ill-served at best by Millette's proposed construction of this condition.[4] *See United States*

---

the particular facts of this case. "A party cannot preserve a claim of error by switching horses in midstream, that is, by making one claim below and a different claim on appeal." *United States v. Leach*, 89 F.4th 189, 109 (1st Cir. 2023).

[4] Millette's analogy to the concept of constructive possession misses the mark. *See* D.Br. at 22. The question of whether one can constructively possess a firearm in another room is based on an entirely different set of legal concepts and public policy concerns than whether a person responsible for supervising a probationer can be present by being somewhere other than in the same physical space with the probationer. *See* Black's Law Dictionary 1302 (11th ed. 2019). (defining presence as: 1. The state or fact of being in a particular place and time <his presence at the scene saved two lives>. 2. Close physical proximity coupled with awareness <the agent was in the presence of the principal>.).

*v. Gallo*, 20 F.3d 7, 12 (1st Cir. 1994) ("conditions of probation can be written—and must be read—in a commonsense way.").

In addition, the district court properly relied on the fact that Millette lied to his probation officer as evidence that he knew his conduct violated the condition. "Fabrication of evidence by a defendant or false explanations" are "clearly admissible to prove his guilty state of mind." *United States v. Hughes*, 716 F.2d 234, 240-41 (4th Cir. 1983); *id*. at 241 (holding that "evidence that [defendant's] alibi was fabricated was properly considered by the jury as probative evidence of his illicit intent").

There was no ambiguity here, and the district court correctly concluded as much. The record thus amply demonstrates that the government proved by a preponderance of the evidence that Millette violation special condition 9. The court properly exercised its discretion in revoking Millette's supervised release on that basis, and Millette has failed to demonstrate any error.

Likewise, Millette's reliance on the rule of lenity is also unavailing. First, this claim is raised for the first time on appeal and is therefore unpreserved. *See United States v. Rivera-Rodríguez*, 75 F.4th

1, 22 (1st Cir. 2023) ("Because the appellant raises the issue . . . for the first time on appeal, our review is for plain error."). *See United States v. Suchowolski*, 838 F.3d 530, 534 (5th Cir. 2016) (holding that rule-of-lenity claim raised for first time on appeal was reviewed for plain error only); *Adams v. State*, 680 S.E.2d 429, 431 (Ga. Ct. App. 2009) (finding waiver where rule-of-lenity claim was raised for first time on appeal). *But see United States v. Dawson*, 64 F.4th 1227, 1239 (rejecting government's waiver argument where defendant raised rule-of-lenity claim for the first time on appeal and noting that "a party cannot waive lenity").

Second, even if addressed, the rule of lenity "is a tool of *statutory interpretation*" and does not apply to the court's evaluation of a condition of supervised release. *United States v. Báez-Martínez*, 950 F.3d 119, 129 (1st Cir. 2020), citing Black's Law Dictionary (emphasis added); *United States v. Gonzalez*, 407 F.3d 118, 124 (2d Cir. 2005); *United States v. McEntire*, 153 F.3d 424, 438 n. 16 (7th Cir. 1998); *United States v. Dion*, 37 F.4th 31, 39 (1st Cir. 2022) (The rule of lenity is "a principle of statutory construction that requires narrow constructions of ambiguous *criminal statutes*") (emphasis added);

*United States v. Aponte-Guzman*, 696 F.3d 157, 160 (1st Cir. 2012)

(noting that "the case law makes pellucid that the rule of lenity, which

has a laser-like *statutory* focus, does not apply to drug-weight

calculations under the sentencing guidelines") (emphasis added).

Millette acknowledges as much. *See* D.Br. at 19 (citing *United States v.*

*Metzener*, 584 F.3d 928 (10th Cir. 2009) (holding that the rule of lenity

is a principle of statutory construction and "has no applicability" in the

context of condition of "supervised release imposed by a court order");

*accord United States v. Booth*, 551 F.3d 535, 541 (6th Cir. 2009).[5]

Third, the rule of lenity, where it does apply, is resorted to only if

there remains a "grievous ambiguity or uncertainty in the statute," such

that the court must simply "'guess as to what Congress intended.'"

*Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (internal

---

[5]     The state court cases cited by Millette are also inapposite. In *State*
*v. Gauthier*, 145 A.3d 833, 841 (Vt. 2016), the court did not address,
much less hold, that the rule of lenity applied to a condition of probation
and, in any event, the court affirmed the defendant's revocation of
probation. *People v. Hoeninghaus*, 16 Cal.Rptr.3d 258 (Cal. Ct. App.
2004), was not a revocation of probation proceeding, but rather an
appeal from the denial of a motion to suppress. And *Commonwealth v.*
*Hall*, 80 A.3d 1204 (Pa. 2013), involved the interpretation of a statute,
and thus is consistent with the federal cases limiting the application of
the rule to issues of statutory construction.

quotation marks omitted). As addressed above, there is no ambiguity in this case regarding the condition's application to Millette's specific conduct, and therefore no need to resort to the rule of lenity. *See Dion*, 37 F.4th at 39 (rejecting application of rule of lenity where appellant failed to develop any argument that a "grievous ambiguity" existed).

## C. Millette failed to object to the reimposition of the condition, and any modification should come from the district court. (Appellant's arguments III and IV).

Millette's third and fourth contentions are, respectively, that the district court "erred in reimposing what it agreed was an ambiguous condition," and "erred in failing to explain why it imposed an admittedly vague term and in imposing a cookie-cutter term it may intend to change later." D.Br. at 24, 25. This Court should not address these claims for several reasons. First, Millette did not object to the reimposition of the no-contact condition. He requested that the condition "be clarified" by the court, RA 182, but he did not argue—and indeed never has—that the court was not justified in imposing the condition. Accordingly, Millette has forfeited this ground by not providing an objection to the condition and he has waived this claim on appeal by failing to argue plain error. *United States v. Rodriguez-*

*Monserrate*, 22 F.4th 35, 40 (1st Cir. 2021); *United States v. York*, 357 F.3d 14, 19 (1st Cir. 2004) ("This court ordinarily reviews challenges to conditions of supervised release for abuse of discretion, but if the issue is forfeited, review is for plain error only."); *see also United States v. Bramley*, 847 F.3d 1, 5 (1st Cir. 2017) ("The proponent of plain error must carry the devoir of persuasion as to each of the four elements that collectively comprise the plain error standard.").

Second, Millette has filed a motion to amend or clarify special condition 8, in which he has requested that the district court "amend condition 8 so that it no longer applies to his daughter and for such other and further relief as is just and warranted under the circumstances." D 158 at 4. This issue is currently pending before the district court and, insofar as the district court has yet to rule on it,[6] this Court should abstain from addressing it. An appellate court is a "court of review, not first view," *Home Depot USA, Inc. v. Lafarge North America, Inc.*, 59 F.4th 55, 64 (3d Cir. 2023), and thus "ordinarily decline[s] to consider issues not decided by a district court, choosing

---

[6]     According to the docket entries on CM/ECF, a hearing on this motion has been scheduled for April 3, 2024. D 159.

instead to allow that court to consider them in the first instance." *Forestal Guarani, S.A. v. Daros Intern., Inc.*, 613 F.3d 395, 401 (3d Cir. 2010); *accord In re Montgomery Ward & Co.*, 428 F.3d 154, 166 (3d Cir. 2005) (declining to consider issues "in the first instance as the district court did not pass on them"). *See also Quality Associates, Inc. v. The Proctor & Gamble Distributing LLC*, 949 F.3d 283, 290 (6th Cir. 2020) (where district court did not decide issue, the "better course of action is to remand and let the district court consider the issue in the first instance").

This principle is especially true in the context of a supervised release proceeding, where the district court has a unique role as well as a "superior coign of vantage" and "familiarity with the [defendant's] case." *United States v. Vargas-Davila*, 649 F.3d 129, 132 (1st Cir. 2011). Indeed, "the very purpose of a supervised release revocation hearing is to determine the gravity of the breach of [the court's] trust committed by the defendant . . . . " *United States v. Ramos*, 979 F.3d 994, 1001 (2d Cir. 2020). *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (A defendant's ability to follow the conditions of supervised release reflects the trust placed in him by the sentencing court—essentially, the

defendant "shows reasonable promise of being able to return to society and function as a responsible, self-reliant person").

In this case, the district court is in the best position to decide whether the condition of supervised release requires clarification. And the district court retains authority to modify conditions of supervised release even when the case is on appeal. *See United States v. D'Amario*, 412 F.3d 253, 255 (1st Cir. 2005) (holding that the district court has "plenary jurisdiction to supervise a convicted defendant's release," and retains such authority during the pendency of an appeal). For these reasons, this Court should decline Millette's request to disturb the district court's reimposition of the no-contact condition. *See United States v. McCullock,* 991 F.3d 313, 323 (1st Cir. 2021) (noting that "if more were needed, we point out that McCullock is free to ask the judge to modify the special condition under 18 U.S.C. § 3583(e)(2)").

In any event, even if the court were to reach this issue, the condition was properly reimposed. This Court has upheld nearly identical conditions in similar circumstances. *See McCullock,* 991 F.3d at 319 (finding McCullock could not establish plain error in court's imposition of no-contact condition using identical language as here);

*United States v. DaSilva*, 844 F.3d 8, 11-13 (1st Cir. 2016); *United States v. Pabon*, 819 F.3d 26, 29-32 (1st Cir. 2016); *United States v. Mercado*, 777 F.3d 532, 538-39 (1st Cir. 2015). The condition is "sufficiently circumscribed"; it does not place an absolute ban on Millette's ability to associate with minors, including his daughter, but simply requires approval by the Probation Office before he does so. *See United States v. Cabrera-Rivera*, 893 F.3d 14, 26 (1st Cir. 2018) (placing some weight on the condition's preapproval component). This Court has approved of special conditions, properly cabined, when warranted by the defendant's prior offenses and necessary to protect minors from further harm. *See United States v. Benoit*, 975 F.3d 20 (1st Cir. 2020); *Pabon*, 819 F.3d 26.

> "[A]ssociational conditions may be proper where the defendant has recently committed a sex offense against a minor, *or* where the intervening time between a prior sex offense and the present conviction is marked by substantial criminal activity, *or* where the intervening time between a prior sex offense and the present conviction is marked by substantial criminal activity, *or* where the defendant's conduct otherwise indicates an enhanced risk to minors."

*Pabon*, 819 F.3d at 31 (emphasis in original). "[S]uch conditions are sufficiently circumscribed when they do not place an outright ban on association with minors, but only curtail association, such as by

requiring pre-approval by the probation officer or another authority. *Id*.

at 31-32 (internal quotation marks omitted). Further, "[w]here the

restriction is subject to supervision by the probation officer, a safeguard

is that the defendant can petition the district court to modify the

condition in the event that approval has been unreasonably withheld."

*Id*. at 32. In this case, the condition permits contact under the

supervision of a responsible person approved by the Probation Office,

and there is no evidence here that the Probation Office has

unreasonably withheld its approval.[7]

    There were sound reasons for the court to have imposed special

condition 8 based on reasonable concerns that Millette poses an

---

[7]    Millette relies on *United States v. Hinkel*, 837 F.3d 111 (1st Cir. 2016), for the proposition that this Court "has . . . made clear that ambiguous conditions of supervised release are improper." D.Br. at 20. *Hinkel* involved a different condition of supervised release and is readily distinguishable from this case. The condition at issue in *Hinkel* banned the defendant from all internet access without prior approval from his probation officer. *Id*. at 126. The Court found that this swept too broadly because the defendant's use of the internet was "largely collateral to the offense in question." *Id*. By contrast, the no-contact condition in this case is directly related to Millette's offense and was reasonably imposed consistent with identical language approved of in this Court's prior cases. *See McCullock*, 991 F.3d at 319; *Pabon*, 819 F.3d 26, 29-32.

enhanced risk to minors. These reasons include, but are not limited to, the following facts:

- In 2010, Millette was convicted in Maine state court for possession of sexually explicit materials of a minor under 12. SA 8.

- In 2016, in the instant case, Defendant was convicted of possession of child pornography. SA 3.

- As part of the offense conduct of the instant case, Defendant possessed "a large number of images of child sexual abuse, 24,277 still images, 1,022 videos of child pornography." D 148 at 92.

- In March 2021, a review of Millette's internet activity revealed that he was searching for "tykable diapers" and the term "ABDL" (Adult Baby Diaper Lovers) to visit sexual fetish websites. SA 24.

- On April 5, 2021, a review of Millette's internet activity was reviewed which revealed searches on eBay for young males in speedos and screenshots of Words with Friends (an online game) profile pictures of people who appear to be young in age. *Id.*

- On May 19, 2021, Millette's internet history revealed that he was using apps to view images of children in diapers, conducting searches for movies involving young boys, including screencaps involving nudity of young children in foreign films. SA 6.

- On May 16, 2022, Millette disclosed to his supervising officer that he was in possession of parenting magazines that depicted both adults and minors that he found sexually attractive. SA 27.

- On May 20, 2022, Millette disclosed to his supervising officer that he had subscribed to "Parenting" Magazine purely for arousal purposes and threw the magazines away four weeks prior. *Id.*

Overall, Millette's past convictions and more recent conduct demonstrate that he poses an ongoing and enhanced risk of danger to minors. His conduct suggests that he continues to struggle with attraction to minors and curbing his impulses. Further, Millette's conduct that resulted in the revocation of his supervised release suggests that he fails to recognize the need for him to strictly comply with conditions of supervised release that have been imposed to protect minors.

For these reasons, even assuming the issue were preserved, the district court acted well within its discretion in reimposing the no-contact condition, and if any clarification is required, the district court is in the best position to make that decision moving forward based on the litigation currently pending before it. Millette has failed to demonstrate any error, much less plain error, and this Court should affirm the district court's revocation of Millette's supervised release.

# CONCLUSION

For the above-stated reasons, the judgment below should be affirmed.

Respectfully submitted,

DARCIE N. MCELWEE
United States Attorney

/s/ Brian S. Kleinbord

Brian S. Kleinbord
Assistant U.S. Attorney

Dated: March 29, 2024

# United States Court of Appeals

## FOR THE FIRST CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

CA No. 23-1819

UNITED STATES OF AMERICA

v.

KEVIN MILLETTE,

TO BE INCLUDED IMMEDIATELY BEFORE THE
CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT

1. This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

    14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman). Specify software name and version, typeface name, and point size below (for example, Wordperfect 8, CG Times, 14 point):
    <u>Century Schoolbook , 14 pt</u>

    10 1/2 characters per inch, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and characters per inch below (for example, Wordperfect 8, Courier, 10 1/2 CPI):

2. EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; addendum; and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

    ❑ _____ Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

    ☒ 6,437 Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

    ❑ _____Lines of Mono spaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the word or line print-out.

<u>/s/ Brian S. Kleinbord</u>
Signature of Filing Party

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2024, I electronically filed

Government's Brief with the Clerk of Court using the CM/ECF system,

which will send notification of such filing to the following:

Edward S. MacColl
Thompson, Bull, Bass & MacColl, LLC, P.A.
15 Monument Square, 4th Floor
Portland, ME 04101


/s/ Katherine C. Whalen
Paralegal Specialist