# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

No. 23-1819

United States of America,

Appellee,

v.

Kevin Millette,

Defendant-Appellant.

On appeal from the United States District Court
for the District of Maine

Reply Brief of Appellant

Kevin Millette

Edward S. MacColl
Thompson, Bull, Bass & MacColl, LLC, P.A.
15 Monument Square, 4th Floor
Portland, Maine 04101
(207) 774-7600

# Table of Contents

Table of Authorities……………………………………………………….. ii

Introduction…………………………………………………………………… 1

Argument………………………………………………………………….... 2

    I.     Mr. Millette did not waive the rule or concept of lenity…………………………………………………………….... 2

    II.    The underlying judgment's meaning presents a question of law…………………………………………………………….... 4

    III.   The presumption and concept of lenity apply to the underlying judgment…………...……………………………………………..... 5

    IV.   The government proposes an unprecedented and narrow definition of "present" that defies the laws of physics………….….... 9

Conclusion………………………………………………………………….. 10

Certificate of Service…....………………………………………………... 11

Certificate of Compliance……………………………………………….. 12

# Table of Authorities

**Court Cases**

*Albernaz v. United States,*
　　450 U.S. 333 (1981)……………………………………………..………. 7

*Axia NetMedia Corp. v. Mass Tech. Park Corp.,*
　　889 F.3d 1 (1st Cir. 2018)……………………………………………. 7, 8

*Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n,*
　　389 U.S. 64, 75, 88 S. Ct. 201, 19 L. Ed. 2d 236
　　(1967)…………………………………………….………...………… 7

*Meyer v. Brown & Root Constr. Co.,*
　　661 F.2d 369, 373 (5th Cir. 1981)…………………………………….... 7

*NBA Properties, Inc. v. Gold,*
　　895 F.2d 30 (1st Cir. 1990)……………………………………… 5, 7, 8

*Schmidt v. Lessard,*
　　414 U.S. 473, 476, 94 S. Ct. 713, 38 L. Ed. 2d 661
　　(1974)…………………………………………….……...………… 7

*Scott v. Schedler,*
　　826 F.3d 207, 212 (5th Cir. 2016)………………………………….. 7

*U.S. Steel Corp. v. United Mine Workers of Am.,*
　　519 F.2d 1236, 1246 (5th Cir. 1975)………………………………….. 7

*United States v. Albertson,*
　　645 F.3d 191, 200-01 (3d Cir. 2011)…………………………….…..... 3

*United States v. Baez-Martinez,*
　　950 F.3d 119, 129 (1st Cir. 2020)………………………...…………….. 6

*United States v. Boston Sci. Corp.,*
　　167 F. Supp. 2d 424, 430 (D. Mass. 2001)………………………………… 5

*United States v. Candelario-Santana,*
　　977 F.3d 146 (1st Cir. 2020)………………………………………. 2, 6, 7, 8

*United States v. Gonzalez,*
　　407 F.3d 118, 124 (2d Cir. 2005)…………………………………….. 6

*United States v. Hinkel,*
　　837 F.3d 111, 126 (1st Cir. 2016)…………..………………………. 2, 8

*United States v. J.B. Williams Co.,*
　　498 F.2d 414, 431 (2d Cir. 1974)…………………………………….. 5

*United States v. Mercado,*
　　777 F.3d 532 (1st Cir. 2015)………………………….……………… 10

*United States v. Mike,*
　　632 F.3d 686, 696-97 (10th Cir. 2011)……………………………….... 3

*United States v. Phillips,*

    704 F.3d 754, 767-68 (9th Cir. 2012)…………...………………....… 3

*United States v. Reader's Digest Assoc.,*
    662 F.2d 955, 961 (3d Cir. 1981)……...…………………………..…… 5

*United States v. Rivera-Rogriguez,*
    75 F.4th 1, 22 (1st Cir. 2023)………….…………………………....… 2

*United States v. Thompson*,
    777 F.3d 368 (7th Cir. 2015)…………….…..……………………….… 3

*United States v. Zobel*,
    696 F.3d 558, 574-75 (6th Cir. 2012)………...…………………..…… 3

## Miscellaneous

Black's Law Dictionary……………………...……………………………….. 9

# INTRODUCTION

This appeal generates only legal issues. No factual disputes were presented below, nor has Mr. Millette asked this Court to revisit any finding of fact. To the contrary, defense counsel explained to the district court that "there isn't a dispute as to what happened. . . Mr. Millette and [his daughter] end[ed] up sleeping on a bed and a cot in the same room. . . We don't agree it's a violation because we think the approved supervisor (Mr. Millette's mother) was present within the meaning of the [conditions of supervised release]," because she was continuously in the same room, or the adjacent back deck or the adjacent room. (App. I, p. 111.)

The purely legal issues on appeal are whether (a) "presence" required attendance closer than the adjacent deck or the adjacent room, (b) whether the rule of lenity, due process or a similar concept required the district court to interpret its admittedly ambiguous special condition narrowly, (c) whether the court erred in reimposing a condition it acknowledged was ambiguous and required clarification, and (d) whether the district court erred in doing so without explanation.

Rather than focusing on these legal issues, the government relies on standard appellee arguments, such as waiver and deference to lower court factfinding, that, with one exception[1], have no proper role in this appeal.

---

[1] Mr. Millette's initial brief asks the Court to direct the district court to except his children from special condition 8. Although counsel believes he preserved for Mr. Millette the contention that

# ARGUMENT

## I. Mr. Millette did not waive the rule or concept of lenity

The most perplexing of the government's false assertions and meritless arguments starts at page 21 of its brief, where the government argues "the rule of lenity is unavailing. . .. [It] is raised for the first time on appeal and is therefore unpreserved," *citing United States v. Rivera-Rogriguez*, 75 F.4th 1, 22 (1st Cir. 2023). To the contrary, although Mr. Millette acknowledged a split in authorities concerning whether the appropriate name for the doctrine is the "rule of lenity," he contended repeatedly that the rule of concept of lenity required that the ambiguous word "present" be resolved in the defendant's favor. For example, Mr. Millette's motion to dismiss the government's petition, provided as follows:

> Even assuming the word "presence" is ambiguous, due process and the rule of lenity require the ambiguity be resolved in favor of the defendant where additional criminal sanctions are sought. Although some courts have suggested the rule of lenity applies only in interpreting statutes and rules, the First Circuit extends a broader remit. For example, in *United States v. Candelario-Santana*, 977 F.3d 146 (1st Cir. 2020), the court applied the rule of lenity to construe an ambiguous jury verdict in the defendant's favor. The court has likewise made clear that ambiguous conditions of supervised release are improper. *United States v. Hinkel*, 837 F.3d 111, 126 (1st Cir. 2016)(vacating several conditions of supervised release of a sex offender as overly broad, including one that operated "too ambiguously").

---

the condition is impermissibly vague, counsel concedes that he did not preserve the contention that the condition, even if clarified, cannot apply to Mr. Millette's daughter.

Judge Posner's decision for the Seventh Circuit in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), includes an excellent discussion of the difficulties that arise out of ambiguous and broad conditions of supervised release. He explains the reluctance of defendants and defense counsel to object to them at sentencing (thereby risking a judge's wrath and a longer prison sentence), and he documents that ambiguous conditions are routinely imposed and frustrate the court system and defendant's rights. The court's description of some of the ambiguities presented by that case fully applies here:

> The conditions imposed are riddled with ambiguities. Example: "as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics." There is no indication of what is meant by "personal history" and "characteristics" or what "risks" must be disclosed to which "third parties."

Most significantly for present purposes, Judge Posner explained that even appellate courts that "brush aside objections to the breadth and ambiguity of the many conditions of supervised release imposed by district judges. . .in all cases . . . interpreted an overbroad or ambiguous condition narrowly." *Id*. at 380, citing *United States v. Phillips*, 704 F.3d 754, 767-68 (9th Cir. 2012); *United States v. Zobel*, 696 F.3d 558, 574-75 (6th Cir. 2012); *United States v. Albertson*, 645 F.3d 191, 200-01 (3d Cir. 2011); and *United States v. Mike*, 632 F.3d 686, 696-97 (10th Cir. 2011).

Mr. Millette respectfully contends that once the word "presence" is given its proper "narrow" construction, no violation is alleged in the petition.

(App. I., pp. 31-32.) Those arguments were repeated and preserved at the final hearing. Indeed, the motion to dismiss was denied at that hearing. (App. I. p. 96.) After the denial, defense counsel reiterated that "we have to interpret the order

3

[imposing conditions of supervised release] in favor of the defendant, if it's ambiguous." (App. I. p. 105.) The district court acknowledged that the meaning of "present" was ambiguous, including by saying, "and really what is the definition of presence? Is it within earshot and eyeshot? Is it – you know, what is it? And I do say there is some ambiguity there?" (App. I. p. 108.) Although the district court never defined "present," it effectively resolved the ambiguity in the government's favor, by finding a violation. (App. I. p. 177.) Even after that finding, defense counsel explained that although he "respect[ed] the court's conclusion that it's a violation," he contended "the presumption is the other way, and the ambiguity has to be resolved in favor of the defendant." (App. I. p. 180.)

The issue was presented, pressed, and preserved.

**II. The underlying judgment's meaning presents a question of law**

Beginning at page 14 of its brief, the government argues interminably that factual findings are reviewed deferentially, but without identifying any disputed issue of fact. The central issue before the district court was and on appeal is the meaning of the requirement in the underlying judgment that an approved supervisor be "present" during "association" with a minor. As quoted above, Mr. Millette conceded the factual allegations before the hearing. He challenged only the government's contention that the approved supervisor was not "present" within

4

the meaning of the decree when she was on the adjacent deck or in the adjacent bedroom.

Although the government's brief treats the district court's interpretation of its own decree as a question of fact, the government cites no case that the meaning of a judicial decree presents a fact question, and the defense can find none. Instead, the meaning of a judicial decree, "even an ambiguous [consent order], is a question of law for the court." *United States v. Boston Sci. Corp.*, 167 F. Supp. 2d 424, 430 (D. Mass. 2001), quoting *United States v. Reader's Digest Ass'n, Inc.*, 662 F.2d 955, 961 (3d Cir. 1981), and citing *United States v. J.B. Williams Co.*, 498 F.2d 414, 431 (2d Cir. 1974). *See also NBA Properties, Inc. v. Gold*, 895 F.2d 30 (1st Cir. 1990) (reversing district court's interpretation of consent decree, explaining that decrees potentially subject to criminal enforcement must be narrowly construed, and treating interpretation as question of law).

### III. The presumption and concept of lenity apply to the underlying judgment

The government cites *United States v. Baez-Martinez*, 950 F.3d 119, 129 (1st Cir. 2020), for the proposition that the rule of lenity applies only when construing statutes and "does not apply to the court's evaluation of a condition of supervised release." *Baez-Martinez*, however, involved a truly illogical attempt to invoke the rule of lenity. The question before the Court was whether a Puerto Rico murder statute might, under the categorical approach, include crimes that were not

5

crimes of violence. As the Court explained, the defendant, in effect, asked the Court to give a criminal statute under which he had been previously convicted a *broad* reading so that he could argue no violence was necessarily involved; the rule of lenity, on the other hand, requires narrow interpretations.

The government also mistakenly cites *United States v. Gonzalez,* 407 F.3d 118, 124 (2d Cir. 2005), for the proposition that the rule of lenity applies only to criminal statutes. *Gonzalez*, instead, recognized that the rule applies to sentencing guidelines as well as statutes, but not to resolving factual disputes decided in applying the guidelines. None of the cases cited by the government holds that a criminal judgement setting forth ambiguous conditions of supervision or similar judicial decrees are not required to be interpreted narrowly, under either the rule of lenity or any related concept.

As noted above, Mr. Millette contended below that both the rule of lenity and due process required ambiguity in the decree setting forth his conditions of supervision to be resolved in his favor. This Court has invoked both the rule of lenity and related concepts under the due process clause to require decrees to be carefully crafted with ambiguity resolved in the defendant's favor.

The government failed to address this Court's decision in *United States v. Candelario-Santana*, 977 F.3d 146 (1st Cir. 2020), which was cited in Mr. Millette's initial brief and which applied the concept of lenity to narrowly construe

an ambiguous jury verdict for double jeopardy purposes. The Court there explained, "ambiguous verdicts (much like ambiguous criminal statutes) must be construed in favor of the defendant." *Id*. at 161. The Court cited *Albernaz v. United States*, 450 U.S. 333 (1981), as setting forth the controlling "policy of lenity" applicable to interpreting the verdict it was considering. *Candelario-Santana*, 977 F.3d at 961.

The Court has similarly applied a policy of lenity under the due process clause to construe narrowly various judicial decrees subject to enforcement by criminal punishment. In *Axia NetMedia Corp. v. Mass Tech. Park Corp*., 889 F.3d 1 (1st Cir. 2018), the Court explained that the requirement in Federal Rule of Civil Procedure 65, that civil injunctions state their terms "specifically" arise out of the "elementary due process requirement of notice" to those subject to potential criminal punishment proceedings, as follows:

> The "specificity requirements are not 'merely technical' but are 'designed to prevent uncertainty and confusion and to avoid basing a 'contempt citation on a decree too vague to be understood.'" *NBA Props. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990) (alterations omitted) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L. Ed. 2d 661 (1974)). The purpose of the specificity requirement is to protect "the elementary due process requirement of notice." *Scott v. Schedler*, 826 F.3d 207, 212 (5th Cir. 2016) (per curiam) (quoting *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 (5th Cir. 1975)). An "injunction must simply be framed so that those enjoined will know what conduct the court has prohibited." *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) (citing *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 75, 88 S. Ct. 201, 19 L. Ed. 2d 236 (1967)).

7

*Axia NetMedia Corp.*, 889 F.3d at 12.

Just as the Court requires civil injunctions to be specific to satisfy due process, the court has likewise made clear that ambiguous conditions of supervised release are improper. *United States v. Hinkel*, 837 F.3d 111, 126 (1st Cir. 2016).

And just as due process and the doctrine of lenity require that ambiguous criminal jury verdicts, *see United States v. Candelario-Santana*, *supra*, and civil injunctions, *see NBA Props. v. Gold*, *supra*, "must be construed in favor of" those potentially subject to criminal punishment as a corollary to the requirements of due process, so, too, ambiguous decrees imposing conditions of supervised release should be construed in favor of the defendant at revocation proceedings. The government's brief provides no logical basis to allow ambiguous conditions of supervised release to be construed against the defendant.

As explained in Mr. Millette's initial brief, the government did explain below why it opposed clear conditions of supervision: the government prefers broad discretion, both before and, retroactively, after an alleged violation, to interpret the conditions of supervision[2]. (App. I p. 110-11.) It is understandable

---

[2] Government counsel argued the condition should not be clarified and that, instead, probation would prefer to "sit down with [Mr. Millette] and go over this condition again. . . and instruct him." But that is not the process probation, or the government employed. The government charged two violations, one because a second minor was present (with her parent and an approved supervisor) at some functions and the other because, when only Mr. Millette's daughter

8

for the government to prefer a condition of supervision that, in effect, prohibits any lawful act of which the government or probation might disapprove. But this Court's precedent makes clear the concepts of lenity and due process prohibit such ambiguity in judicial decrees subject to criminal sanction.

### IV. The government proposes an unprecedented and narrow definition of "present" that defies the laws of physics

In its footnote 4, the government purports to cite Black's Law Dictionary for the proposition that "present" means "in the same physical space." The dictionary includes no such definition. And the proposed definition is a physical impossibility.

Like the district court, the government's primary arguments are, in effect, that (a) Mr. Millette was associating with his daughter, within the meaning of the conditions of supervision and (b) he should have known the probation officer would object. Mr. Millette conceded he was associating with his daughter on her weekend visit. Mr. Millette, however, respectfully does not agree he should have known Officer Phillips' subjective state of mind and respectfully contends whether Officer Phillips "would object" is irrelevant. No such condition existed, and

---

was visiting, the approved supervisor was sometimes on the adjacent deck or in the adjacent room during supervised weekend visits. As explained at page 10 of Mr. Millette's initial brief, Officer Phillips testified that before the respective alleged violations, she had ***not*** explained that she interpreted the condition as requiring child-specific approval or that she believed a supervisor is "present" only if in the same room. (App. I. pp. 45 & 55.)

9

conditions of supervision must be reasonably definite, with ambiguity resolved in favor of the defendant.

The government's most creative argument is that Millette's contention that "present" is ambiguous is "novel," noting that although the condition is not uncommon, no court has been called upon to address the meaning of "present" as contained in it. But the issue had never arisen, so far as the defense can determine, because the government had never contended that an approved supervisor *in the home* supervising a visit is nevertheless not "present" if she is in a different room. In pressing its unprecedented argument, the government fails to address this Court's decision, cited in Mr. Millette's initial brief, construing the condition as allowing a defendant to reside with his children so long as an approved supervisor is also in the residence. *See United States v. Mercado*, 777 F.3d 532, 539 (1st Cir. 2015). Since constant presence in the same room with all others sharing a home is virtually impossible, the Court's discussion in *Mercado* necessarily implied the second adult's presence in the home would satisfy this Court's understanding of the requirement for "presence." Any other interpretation resolves an ambiguity against the defendant and does so in a way that makes it impossible for a defendant under this "common" condition to live with, supervise, or carry out his other parental obligations with respect to his own children.

## CONCLUSION

For the forgoing reasons and those set forth in Mr. Millette's initial brief, the Judgment in a Criminal Case should be vacated. Alternatively, if the finding of a violation is not vacated, special condition 8 should be vacated and the matter remanded with instructions to revisit and clarify the condition.

**Executed** at Portland, Maine, this 5th day of April 2024.

    /s/ Edward S. MacColl
Edward S. MacColl
U.S. Court of Appeals Bar No. 7231
Attorney for defendant
Kevin Millette

Thompson, MacColl & Bass, LLC, P.A.
15 Monument Square, 4th Fl.
P.O. Box 447
Portland, ME  04112-0447
(207)  774-7600
emaccoll@thomport.com

## CERTIFICATE OF SERVICE

I, Edward S. MacColl, do hereby certify that, on the above date I made due service of the above document by electronically filing the same using the Court's EM/ECF system.

/s/ Edward S. MacColl
Edward S. MacColl

**Certificate of Compliance**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 2,469 words, excluding sections of the brief exempted under Federal Rule of Appellate procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief was prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Executed at Portland, Maine, this 5th day of April 2024.

/s/ Edward S. MacColl
Edward S. MacColl, Esq.

Thompson, MacColl & Bass, LLC, P.A.
15 Monument Square, 4th Fl.
P.O. Box 447
Portland, ME  04112-0447
(207)  774-7600
emaccoll@thomport.com